**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Melissa Whittaker


     v.                                    Civil No. 05-cv-349-PB

Jo Anne B. Barnhart, Commissioner,
Social Security Administration


## REPORT AND RECOMMENDATION


Plaintiff Melissa Whittaker moves pursuant to 42 U.S.C. §
405(g) to reverse the Commissioner's decision denying her
application for Social Security disability insurance benefits
under Title II of the Social Security Act (the "Act").  The
Commissioner cross moves for an order affirming her decision.
This matter was referred to me for consideration in accordance
with this court's standing administrative order (document no. 2).
For the reasons set forth below, I recommend that this matter be
remanded for further administrative proceedings.

### Standard of Review

I.   Properly Supported Findings Entitled to Deference

After a final decision by the Commissioner denying a
claimant's application for benefits, and upon a claimant's timely
request, a district court is authorized to review the

administrative record and enter a judgment affirming, modifying, or reversing the Commissioner's decision.  See 42 U.S.C. § 405(g).  The court's review is limited in scope, however, and the Commissioner's factual findings are conclusive if they are supported by substantial evidence.  See id.; Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991).  The Commissioner is responsible for determining credibility issues, drawing inferences from the record evidence, and resolving conflicting evidence.  Irlanda Ortiz, 955 F.2d at 769; Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir. 1987).  Therefore, the court must "'uphold the [Commissioner's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion.'"  Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)); see also, Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

The ALJ's findings of fact are conclusive when supported by substantial evidence, but not if they are "derived by ignoring

evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).  If the Commissioner has misapplied the law or has failed to provide a fair hearing, deference to the Commissioner's decision is not appropriate, and remand for further development of the record may be necessary.  See Carroll v. Sec'y of HHS, 705 F.2d 638, 644 (2d Cir. 1983); see also, Slessinger v. Sec'y of HHS, 835 F.2d 937, 939 (1st Cir. 1987) ("The [Commissioner's] conclusions of law are reviewable by this court.").

II.  Parties' Respective Burdens

A claimant seeking disability insurance benefits is disabled within the meaning of the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can reasonably be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A; 42 U.S.C. § 1382c(a)(3).  The claimant has the initial burden to establish the existence of a disabling impairment.  See Bowen v. Yuckert, 482 U.S. 137, 146–47 (1987); Santiago v. Sec'y of HHS, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, the claimant must prove that his impairment prevents him from performing his previous type of

work.  See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985).

In assessing a disability claim, the Commissioner considers objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective assertions of pain and disability, as supported by the testimony of the claimant and other witnesses; and (3) the claimant's educational background, age, and work experience.  Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986)).  The Commissioner applies a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. § 404.1520(a).  Where a claimant has shown an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform.  See Vazquez v. Sec'y of HHS, 683 F.2d 1, 2 (1st Cir. 1982).  If the Commissioner shows that considering the claimant's age, education, work experience, and impairments there are jobs that the claimant can perform, the overall burden to demonstrate disability remains with the claimant.  Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

4

<u>Factual Background</u>[1]

I.   <u>Procedural History</u>

On October 16, 2003, Plaintiff applied for disability insurance benefits alleging that she became unable to work on September 9, 2002 because of a disabling condition.  Tr. 77–79.  She alleged that problems in her left shoulder and pulmonary embolism[2] limited her ability to work.  Tr. 86, 95.  Her application was denied upon initial review, <u>see</u> Tr. 58, 59–62, 178–187, and Plaintiff requested an administrative hearing.

On March 2, 2005, Administrative Law Judge ("ALJ") John R. Mason held a hearing at which Plaintiff was represented by a non-attorney advocate.  Tr. 26–57.  Plaintiff and a vocational expert ("VE") testified.  On March 25, 2005, the ALJ issued a decision finding that Plaintiff was not disabled under the Act, and thus not entitled to disability insurance benefits.  Tr. 14–24.  That decision became the "final decision of the Commissioner" when the

---

[1]Pursuant to Local Rule 9.1(d), the parties have submitted a Joint Statement of Material Facts (document no. 12), which is part of the court's record and adopted herein.  This section is limited to the facts in the record that are pertinent to this Court's report and recommendation.

[2]A pulmonary embolism is an obstruction of a pulmonary artery by detached fragments of thombus from a leg or pelvic vein.  <u>See</u> <u>Stedman's Medical Dictionary</u> ("Stedman's") 580 (27th ed. 2000).

Appeals Council denied Plaintiff's request for review on August
31, 2005.  Tr. 8-10, 12.

II.  <u>The ALJ's Findings</u>

     The ALJ described Plaintiff as "an individual closely
approaching advanced age with a high school education and an
unskilled and skilled work background."  Tr. 23, Finding No. 10.
Her past relevant work was as an appointment scheduler, a
delicatessen manager, and an assembler of plastic components and
sachets at home, which consisted of medium and light exertion
work requiring frequent reaching and handling.  Tr. 18, 23,
Finding No. 9.

     At step one of the sequential analysis, the ALJ found that
Plaintiff had not engaged in substantial gainful activity since
her alleged onset of disability.  Tr. 18, 23 at Finding Nos. 2-3.
At step two, he found that the medical evidence established that
Plaintiff had the severe impairments of chronic adhesive
capsulitis[3] in her left shoulder, and arthritis[4] in her right
shoulder.  Tr. 23, Finding No. 4.  At step three, he found that

─────────────────────

     [3]Adhesive capsulitis is a condition in which motion is
limited in a joint due to inflammatory thickening of a capsule.
<u>Stedman's</u> at 282.

     [4]Arthritis is inflammation of a joint.  <u>See</u> <u>Stedman's</u> at
149.

Plaintiff's impairments did not meet or medically equal any of the impairments described in Appendix 1, Subpart P, Regulation No. 4, and she was therefore not presumed to be disabled because of them.  Id., Finding No. 5.

At step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC")[5] to lift 25 pounds with her right arm and 10 pounds with her left arm occasionally, to stand and walk for 6 hours out of an 8-hour work day, and to sit for 6 hours out of an 8-hour work day if allowed the option to change positions.  Id., Finding No. 8.  Plaintiff was found unable to use her arms for overhead reaching or her left hand for fine manipulation, but she could occasionally write with her left hand.  Id.  The ALJ found that his RFC assessment comported with a "modified range of light work."[6]  Tr. 21, 23, Finding No. 8.

The ALJ found that Plaintiff's allegations regarding the extent of her limitations were not entirely credible because they

---

[5]RFC is the most that a claimant can still do despite his or her limitations.  20 C.F.R. § 404.1545(a)(1).

[6]Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).  "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing."  Id.  The need for "a good deal of walking or standing" is "the primary difference between sedentary and most light jobs."  See SSR 83-10.

were inconsistent with the objective medical evidence and with her reported activities of daily living, which included cooking, shopping, driving, and doing housework.  Id., Finding No. 6; see also Tr. 22.  The ALJ found, however, that Plaintiff was unable to perform her past relevant work.  Id., Finding No. 9.  Based on the VE's testimony, the ALJ found that Plaintiff could make an adjustment to unskilled light work in positions as a recreational attendant, parking lot attendant or furniture rental consultant. Id., Finding No. 11; see also Tr. 22.

The ALJ concluded at step five that: "[c]onsidering the claimant's limitations, she is able to make an adjustment to work as it exists in substantial numbers in the national and local economy; a finding of not disabled is therefore reached within the framework of the Medical-Vocational Guidelines at Rules 202.14 and 202.15."  Tr. at 23-24, Finding No. 11.  Plaintiff was found not disabled under the Act at any time through the date of the ALJ's decision, and therefore not entitled to disability insurance benefits.  Tr. 24, Finding No. 12.

III. Medical Evidence

On July 10, 2002, Dr. Richard P. Hockman, an orthopedist, saw Plaintiff as a new patient.  Tr. 212.  Plaintiff complained

of pain in her left shoulder.  Id.  She had undergone physical

therapy for her shoulder without success.  Id.  Upon exam,

Plaintiff had a completely frozen left shoulder, with no internal

or external rotation when the left arm was held at her side.  Id.

Attempts at abducting[7] her left shoulder, under force, were met

with great resistance because of pain.  Id.  Dr. Hockman opined

that Plaintiff suffered from adhesive pericapsulitis of the left

shoulder, secondary to a shoulder impingement syndrome, and he

prescribed her a shoulder manipulation and injections.  Id.

Dr. Hockman saw Plaintiff again on July 24, 2002.  Tr. 153–

154.  Upon exam, Plaintiff had a normal chest and heart and an

abnormal left shoulder.  Tr. 154.  Dr. Hockman performed a

shoulder manipulation with injections of Marcaine and Depo–

Medrol.  Tr. 153.  Dr. Hockman reported achieving full abduction

and full internal and external rotation of the left shoulder.

Id.  Plaintiff tolerated the procedure well.  Id.

On August 12, 2002, Dr. Hockman saw Plaintiff, who reported

that she made excellent progress after her shoulder manipulation,

but that she was still having trouble sleeping and pain in her

shoulder when she "worked it."  Tr. 211.  She had much better

---

[7]Abduction is movement of a body part away from the median
plane.  See Stedman's at 2.

range of motion.  Id.  She was very happy with her present status

but wanted to do much better.  Id.  Dr. Hockman noted that

Plaintiff was doing well but needed a lot more work, and he

prescribed her Vicodin, Ambien and Diclofenac.

At a visit with Dr. Hockman on September 4, 2002, Plaintiff

reported that she had made excellent progress in the range of

motion of her left shoulder, but that she was not happy with the

amount of pain that she continued to have when reaching and with

movement.  Tr. 210.  She also reported that she suffered from

crepitus[8] in her shoulder.  Id.  Dr. Hockman noted that Plaintiff

continued to have significant pain despite taking Diclofenac, and

he prescribed her Daypro.  Id.

On September 20, 2002, Plaintiff continued to report both

excellent range of motion and significant pain and crunching in

her left shoulder.  Tr. 209.  Upon examination, Dr. Hockman found

that the crepitus remained obvious and her motion was very good.

Id.  Dr. Hockman observed that despite treatment with Daypro and

Diclofenac, Plaintiff continued to have significant pain.  Id.

Dr. Hockman ordered magnetic resonance imaging ("MRI") of

---

[8]Crepitation is a noise or vibration produced by rubbing
bone or irregular degenerated cartilage surfaces together.  See
Stedman's at 424.

Plaintiff's shoulder.  Id.

On October 7, 2002, Dr. Hockman noted that Plaintiff's physical exam remained unchanged since her last visit.  Tr. 208. The radiologist had determined that Plaintiff's MRI scan showed a full thickness tear of her rotator cuff.  Id.  Plaintiff decided to wait until the first of the new year before proceeding with surgery.  Id.

On February 5, 2003, Plaintiff reported to Dr. Hockman that she was doing okay, and that she had recently begun to have a little bit more pain in her shoulder when holding that shoulder still.  Tr. 205.  Upon exam, Dr. Hockman observed that Plaintiff had a nice, well-healed wound from her rotator cuff repair.  Id. Dr. Hockman opined that Plaintiff was doing satisfactorily.

At a physical exam on February 19, 2003, Plaintiff's wound looked nice and clean, and the amount of pain that Plaintiff experienced was deemed insignificant.  Tr. 204.  Physical therapy was indicated for treatment.  Id.  On March 12, 2003, Dr. Hockman saw Plaintiff, who reported that she was moving better.  Tr. 203. Dr. Hockman noted that Plaintiff was making slow progress, and he prescribed continuation of physical therapy.  Id.

Plaintiff reported on April 3, 2003 that she was not much

11

better at all.  Tr. 202.  She continued to struggle and have a
lot of pain in her left shoulder.  Id.  Dr. Hockman gave
Plaintiff an injection of Marcaine and Depo-Medrol into her left
shoulder.  Id.  On April 18, 2003, Dr. Hockman saw Plaintiff, who
complained of numbness and tingling in the left upper forearm and
hand; weakness and shaking in the left hand and pain in her left
shoulder.  Tr. 201.  She reported that the injection of Marcaine
and Depo-Medrol she received in her left shoulder relieved her
pain for two days.  Id.  Upon exam, Plaintiff had tenderness,
arthropathy,[9] and limited range of motion in her left shoulder,
as well as weakness in her left arm.  Tr. 201.  Dr. Hockman noted
that Plaintiff was not making progress with her new nerve
symptoms and scheduled her for an electromyogram ("EMG") study.
Id.  He also noted that she was unable to work.  Id.

On May 23, 2003, Dr. Hockman saw Plaintiff, who reported
that her left shoulder was doing okay as far as pain was
concerned, but that she did not have very good shoulder motion,
and that she was having significant pain in her collarbone, which
throbbed when she walked or used it laterally.  Tr. 143-44, 199.
Upon exam, Plaintiff had tenderness in her left shoulder.  Tr.

---

[9]Arthropathy is a disease that affects a joint.  See
Stedman's at 150.

199.  Dr. Hockman noted that Plaintiff's EMG study revealed a mild to moderate nerve compression[10] in her forearm that did not require surgery.  Id.  He diagnosed Plaintiff with arthritis of the clavicle; a continued lack of motion in her left shoulder; and a nerve compression in her left forearm.  Id.

On June 25, 2003, Dr. Hockman saw Plaintiff, who had been diagnosed with arthritis in the AC joint of her left shoulder. Tr. 149-150.  Upon exam, Plaintiff had a normal chest and heart, and tenderness in the AC joint of her left shoulder.  Tr. 150. Dr. Hockman performed an excision[11] of the distal end of the clavicle of Plaintiff's left shoulder.  Tr. 149.  She tolerated the procedure well and her condition was satisfactory.  Id.

At a visit on July 21, 2003, Dr. Hockman saw Plaintiff, who reported that she continued to have pain in her left shoulder. Tr. 196.  Upon exam, Plaintiff had decreased range of motion and recurring adhesive pericapsulitis in her left shoulder.  Id.  Dr. Hockman diagnosed Plaintiff with post-operative recurring adhesive pericapsulitis, and he prescribed home stretching

---

[10]A nerve compression is the squeezing together of nerves. See Stedman's at 393.

[11]An excision is the surgical removal of all or part of a structure or organ.  See Stedman's at 629.

13

exercises.  <u>Id.</u>

On July 31, 2003, Dr. Hockman saw Plaintiff, who reported that she had gotten worse, and that she had swelling in the subacromial space[12] the previous night.  Tr. 195.  Upon exam, Plaintiff could not move her left arm.  <u>Id.</u>  Dr. Hockman scheduled Plaintiff for an MRI study of her left shoulder to determine whether there was more identifiable pathology in the shoulder.  <u>Id.</u>  He opined that she was incapable of working.  <u>Id.</u>

On August 18, 2003, Dr. Hockman saw Plaintiff, who reported that she had not gotten any better since her last visit.  Tr. 194.  Upon exam, Plaintiff's left shoulder was very sore and tender with a limited range of motion.  <u>Id.</u>  Dr. Hockman noted that Plaintiff's MRI study revealed an intact rotator cuff, and that everything looked good except for some granulation tissue in the subacromial space.  <u>Id.</u>  Dr. Hockman provided Plaintiff with an injection of Marcaine and Depo-Medrol into her left shoulder, which relieved a good deal of her pain.  <u>Id.</u>

On January 15, 2004, Dr. Burton A. Nault, a non-examining state agency physician, completed an RFC assessment for

---

[12]The subacromial space is located below the lateral end of the spine that articulates with the shoulder.  <u>See</u> <u>Stedman's</u> at 18, 1714.

Plaintiff.  He opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk with breaks for about six hours in an eight hour workday; sit with breaks for about six hours in an eight hour workday; push/pull without limitations; occasionally climb, balance, stoop, kneel, crouch, and crawl; and not reach overhead with the left upper extremity.  Tr. 179-181.

In his narrative, Dr. Nault noted that Plaintiff's medical problems included pulmonary emboli, which had responded to treatment, and a significant obesity problem.  Tr. 184-185.  Dr. Nault further noted that "none of [Plaintiff's] treating or evaluating sources have expressed an opinion as to her actual retained functional capacity, but a total disability for the claimant has also never been expressed."  Tr. 185.

On February 22, 2004, Dr. Hockman opined that Plaintiff had a severe limitation in her shoulder that began in 2002, which prevented her from performing minimal activity or sedentary work. Tr. 188.  Dr. Hockman noted that he expected a reduction in Plaintiff's symptoms by March of 2004.  Id.  He opined that further therapy would be reasonably expected to result in full or partial recovery, that Plaintiff had not yet reached maximum

medical improvement, and that Plaintiff was not a candidate for rehabilitation services.  Id.

On February 20, 2004, Plaintiff saw Dr. Hockman and complained of right shoulder pain due to impingement.  Tr. 190. Plaintiff reported that Prednisone did not help her right shoulder in any way.  Id.  Upon exam, Plaintiff had tenderness and little internal rotation in her right shoulder.  Id.  Dr. Hockman gave  Plaintiff an injection of Marcaine and Depo-Medrol into her right shoulder.  Id.  Dr. Hockman diagnosed Plaintiff with bursitis/impingement of the right shoulder.  Id.

On February 27, 2004, Dr. Hockman saw Plaintiff, who reported that the injection of Marcaine and Depo-Medrol she received in her right shoulder made her totally well.  Tr. 189. Upon exam, Plaintiff had full range of motion of the right shoulder without any pain.  Id.  Dr. Hockman diagnosed Plaintiff with bursitis/impingement of the right shoulder that was responsive to an injection of Marcaine and Depo-Medro.  Id.

After the ALJ issued his decision, Plaintiff submitted an RFC assessment from Dr. Hockman dated May 12, 2005 to the Appeals Council with her request for review of the ALJ's decision.  Tr. 252-255.  Dr. Hockman opined that Plaintiff was limited to

lifting and/or carrying less than 10 pounds frequently or
occasionally.  Tr. 252.  He also found that Plaintiff had
postural limitations, a limited ability to reach in all
directions, Tr. 253-254, and was limited to jobs were she could
take unscheduled breaks to relieve pain or discomfort.  Tr. 255.

<u>Discussion</u>

I.   <u>Treating Source Opinion</u>

The Plaintiff argues that the ALJ erred in failing to give
Dr. Hockman's opinion controlling weight since he was her
treating physician.  The applicable regulation for evaluation of
medical opinions provides that:

> Generally, we give more weight to opinions from your
> treating sources, since these sources are likely to be
> the medical professionals most able to provide a
> detailed, longitudinal picture of your medical
> impairment(s) and may bring a unique perspective to the
> medical evidence that cannot be obtained from the
> objective medical findings alone or from reports of
> individual examinations, such as consultative
> examinations or brief hospitalizations.  If we find
> that a treating source's opinion on the issue(s) of the
> nature and severity of your impairment(s) is well-
> supported by medically acceptable clinical and
> laboratory diagnostic techniques and is not
> inconsistent with the other substantial evidence in
> your case record, we will give it controlling weight.
> When we do not give the treating source's opinion
> controlling weight, we apply the factors listed in
> paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as
> well as the factors in paragraphs (d)(3) through (d)(6)
> of this section in determining the weight to give the

opinion.  We will always give good reasons in our
notice of determination or decision for the weight we
give your treating source's opinion.

20 § C.F.R. § 1527(d)(2).

In his decision, the ALJ acknowledged that Dr. Hockman's
treatment notes provided the strongest support for Plaintiff's
claim of a complete inability to work because of her pain.  Tr.
21.  The ALJ recounted portions of Dr. Hockman's treatment notes
from July 10, 2002 through August 18, 2003 pertaining to
Plaintiff's left shoulder in his decision.  See Tr. 18-19.  The
ALJ did not address Dr. Hockman's observations on April 18, 2003
and July 31, 2003 that Plaintiff was unable to work.

The ALJ also discussed Dr. Hockman's treatment notes from
February 20, 2004 and February 27, 2004, which pertained to the
treatment of Plaintiff's right shoulder.  Tr. 19.  The ALJ noted
that Dr. Hockman observed that Plaintiff obtained total pain
relief while in the office from an injection of Marcaine and
Depo-Medrol on February 20th, and that Plaintiff reported that
she had a full range of motion on February 27th.  The ALJ did not
mention that between those two visits, on February 22, 2004, Dr.
Hockman opined that Plaintiff had a severe limitation in her left
shoulder that began in 2002, and which prevented her from

18

performing minimal activity or sedentary work.

The ALJ concluded from his review of Dr. Hockman's treating notes, which spans the period from July 2002 through February 2004, that the evidence showed "only fluctuating [range of motion] and degrees of pain."  Tr. 22.  The ALJ then noted that Plaintiff had engaged in a work attempt, which was unsuccessful, from September 2004 through December 2004.  Tr. 22, 23, Finding No. 3.  The ALJ also noted that Plaintiff indicated that she cooks, shops, drives and did housework.  Tr. 22.

The Court presumes from the ALJ's findings, and from the denial of Plaintiff's application, that the ALJ did not give Dr. Hockman's opinions controlling weight.  But the ALJ did not explain in his decision the weight that he gave to Dr. Hockman's opinion.  Nor did the ALJ set forth in his decision an analysis of the factors set forth in 20 C.F.R. § 404.1527(d) for determining the weight that should be accorded to the opinion of a treating source that is not accorded controlling weight.[13]

---

[13]The ALJ was required to consider the following factors in weighing Dr. Hockman's opinion: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) support for the opinion; (4) consistency with the record as a whole; (5) whether the opinion was rendered by a specialist; and (6) any other factors that support or contradict the opinion.  See 20 C.F.R. § 404.1527(d)(2)-(6).

Moreover, the ALJ failed to consider, or ignored, Dr. Hockman's statements on Plaintiff's inability to work.  The Court finds that the ALJ failed to adequately explain his evaluation of Dr. Hockman's opinion, and the weight that he accorded it. Accordingly, a remand for further administrative proceedings is warranted.  See e.g., Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."); Heath v. Barnhart, No. CV-04-2926 FB, 2005 WL 1691044 at *5 (E.D.N.Y. July 20, 2005) (finding that a remand was necessary because the ALJ determined that the opinion of the plaintiff's treating physician was not entitled to controlling weight, but did not apply the factors in 20 C.F.R. § 1527(d)(2) to determine how much weight to give the opinion); Cook v. Barnhart, Civ. No. 03-271-M, 2004 DNH 022, 19-20 (D.N.H. Jan. 23, 2004) (finding that the court could not affirm the ALJ's decision that the claimant had the RFC for light work where the ALJ did not give good reasons for discounting the opinion of the

20

claimant's treating source).

II.  <u>New and Material Evidence</u>

Plaintiff argues that the Commissioner committed reversible error in failing to properly evaluate new and material evidence that Plaintiff submitted after the ALJ issued his March 25, 2005 decision.  Dr. Hockman completed an RFC assessment, dated May 12, 2005, that contradicted Dr. Nault's assessment regarding Plaintiff's ability to lift and/or carry objects, her postural limitations, and her need to take unscheduled breaks to relieve pain or discomfort.  Plaintiff submitted Dr. Hockman's RFC assessment to the Appeals Council as part of her request for review of the ALJ's decision.  The Appeals Council received this evidence and made it a part of the record.  <u>See</u> Tr. 11.

The applicable regulation provides that the Appeals Council "shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."  20 C.F.R. § 404.970(b).  It is not apparent from the form whether Dr. Hockman intended his May 12, 2005 assessment to relate to the period on or before the date of the ALJ's decision.  <u>See</u> Tr. 252-255.  Nevertheless, the Appeals Council indicated that it considered Dr. Hockman's RFC form in

21

ruling on the Plaintiff's request for review.  The Appeals
Council stated in its "Notice of Appeals Council Action" that it
considered Plaintiff's objections to the ALJ's decision, and the
additional evidence that she provided after the ALJ issued his
decision, but stated summarily that it found no basis for
changing the ALJ's decision.  Tr. 8-9.

     The Commissioner argues that Dr. Hockman's RFC assessment
was neither new nor material and therefore need not have been
considered by the Appeals Council.  The Court disagrees.

     Dr. Hockman's RFC assessment was material evidence.  The
only RFC assessment before the ALJ when he reached his decision
was made by Dr. Nault, a non-examining medical consultant, on
January 15, 2004.  The opinions of treating sources are generally
entitled to more weight than the opinions of non-treating and
consulting sources.  See 20 C.F.R. § 404.1527(d)(2).  Dr. Nault
noted in his narrative that there was no RFC assessment from a
treating source in the record.  The SSA did not further develop
the record by obtaining an RFC from Plaintiff's treating source
before the ALJ issued his decision.  See 20 C.F.R. §
404.1545(a)(3) ("before we make a determination that you are not
disabled, we are responsible for developing your complete medical

history, including . . . making every reasonable effort to help

you get medical reports from your own medical sources").  The

directives for evaluating opinion evidence in 20 C.F.R. §

404.1527(d)(2), and Dr. Nault's comments highlighting that there

was no RFC in the record from a treating source, show that Dr.

Hockman's RFC assessment was material.[14]

The Court further finds that Dr. Hockman's May 12, 2005 RFC

assessment was not merely cumulative evidence.  Although Dr.

Hockman's February 22, 2004 and May 12, 2005 opinions are

consistent, the form that Dr. Hockman completed on February 22,

2004 does not provide the detail on Plaintiff's exertional

limitations, postural limitations, and manipulative limitations

that Dr. Hockman addressed in his May 12, 2005 RFC form.

In light of the foregoing facts, the Commissioner should

have provided good reasons for discounting Dr. Hockman's opinion

on Plaintiff's RFC.  I find that the Appeals Council's summary

denial of Plaintiff's request for review was reversible error

---

[14]The Court further notes that Dr. Nault noted that no
treating source had found that claimant was totally disabled at
the time he completed his RFC assessment.  Shortly thereafter,
however, Dr. Hockman opined that Plaintiff was incapable of
performing minimal activity or sedentary work.  There is no
evidence that Dr. Nault was asked to reconsider his RFC
assessment in light of Dr. Hockman's subsequent opinion.

that warrants a remand.  See e.g., Rice v. Barnhart, No. 03-CV-
6222-CJS, 2005 WL 3555512 at 13 (W.D.N.Y. Dec. 22, 2005) (finding
that the Appeals Council erred in failing to follow the
requirements of 20 C.F.R. § 404.1527(d)(2) (2000) by summarily
concluding, without "good reasons" stated, that new evidence that
the plaintiff submitted was insufficient to disturb the ALJ's
determination).

III. Reductions in the Occupational Base Described by the VE

The VE testified that a hypothetical individual with
Plaintiff's limitations would be able to perform three jobs,
recreation attendant, parking lot attendant, and furniture rental
consultant.  Tr. 54-55.  Plaintiff argues that the ALJ erred in
stating the number of available positions that Plaintiff could
perform because the ALJ failed to account for reductions to the
occupational base that the VE testified were warranted when
considering an individual with a limited ability to use her upper
extremities, and inability to use her left dominant hand for fine
manipulation.  The transcript of the hearing shows that the VE
found that Plaintiff's opportunities for the recreation attendant
position would be reduced by approximately 25% because of
Plaintiff's limitations, and that her opportunities to obtain

parking lot attendant positions would be reduced by 50% because of the Plaintiff's limitations in bi-manual activity.  Tr. 55-56.

The Commissioner does not dispute that the ALJ failed to account for the reductions indicated by the VE in his decision. She argues, however, that the ALJ's error is harmless because the total number of positions remaining after accounting for the VE's reductions is still sufficient to meet the Commissioner's burden.

Since I find that a remand is warranted for reconsideration of the evidence pertaining to the opinion of Plaintiff's treating source and the determination of Plaintiff's RFC, the issue of whether the number of jobs available to Plaintiff satisfies the Commissioner's burden at Step 5 of the sequential evaluation need not be decided at this juncture.  The types and number of jobs available to Plaintiff should be reconsidered on remand.

IV.  Plaintiff's Remaining Objections

Finally, Plaintiff contends that the ALJ erred in failing to use the Medical-Vocational Guidelines as a framework for decision-making.  Pl.'s Mem. at 2-6.  Plaintiff also contends that the ALJ failed to consider all of her limitations, which include obesity, asthma, and the phlebitis/blood clots/deep venous thrombosis in her legs.  Pl.'s Mem. at 11.

     Stated briefly, Plaintiff has not demonstrated that the ALJ
failed to properly apply the Medical-Vocational Guidelines as a
framework for decision-making because the evidence does not
support her argument that she is limited to sedentary work.
There is no evidence in the record that shows that Plaintiff is
restricted in her ability to stand and walk, which the SSA has
identified as "the primary difference between sedentary and most
light jobs."  See SSR 83-10.

     With regard to Plaintiff's argument that the ALJ failed to
consider all of her limitations, the only one of those additional
limitations that the Plaintiff mentioned in her testimony at the
hearing was the problem with blood clots in her legs.  See Tr.
40, 47-48.  She stated that the problem required her to stand up
and move around to some degree.  The ALJ accounted for that
limitation by finding that Plaintiff was limited to working in
positions that included a sit/stand option.  Tr. 21, 23 at
Finding 8.  Plaintiff has not pointed to any evidence in the
record that shows that she was limited in her ability to work by
any of the other impairments she alleges were not considered by
the ALJ.  Therefore, I find that the ALJ did not err in failing
to address them.  See e.g., Box v. Shalala, 52 F.3d 168, 171 (8th

Cir. 1995) (finding that there was no error in failing to mention
the plaintiff's obesity where there were no facts in evidence in
the record that showed that his obesity imposed any limitations
on his ability to work); Santiago v. Barnhart, 367 F. Supp. 2d
728, 734 (E.D. Pa. 2005) (finding that the ALJ's failure to
mention the plaintiff's obesity was not a basis to reverse or
remand where the record was devoid of any evidence, medical or
otherwise, that plaintiff's obesity exacerbated his impairments).
Accordingly, I find Plaintiff's remaining objections to be
without merit.

Conclusion

For the reasons set forth above, I recommend that the
Plaintiff's motion for an order reversing the Commissioner's
decision (document no. 10) be granted to the extent that this
matter is remanded to the ALJ for further consideration pursuant
to sentence four of 42 U.S.C. § 405(g). I recommend that the
Commissioner's motion for an order affirming her decision
(document no. 11) be denied.

Any objections to this Report and Recommendation must be
filed within ten (10) days of receipt of this notice. Failure to
file objections within the specified time waives the right to

appeal the district court's order.  See Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date:  May 19, 2006

cc:  Janine Gawryl, Esq.
     David L. Broderick, Esq.